IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MARTIN V. MARTIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SANDRA MARTIN, NOW KNOWN AS SANDRA CARROLL, APPELLEE,

V.

JARED MARTIN, APPELLANT.

Filed August 13, 2024.   No. A-23-546.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed in part, and in part reversed and remanded.

Jared Martin, pro se.

No brief for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Jared Martin, an inmate in the custody of the Nebraska Department of Correctional Services, appeals from an order of the district court for Sarpy County dissolving his marriage to Sandra Martin, now known as Sandra Carroll. Because of his incarceration, Jared attempted to have his mother, who held power of attorney, represent him in the divorce proceedings. However, on the day of the trial, no one appeared on Jared's behalf. The court determined that Jared's mother lacked the ability to represent Jared in this matter and held the trial in Jared's absence. The court ultimately dissolved the marriage, granted sole legal and physical custody of the parties' minor child to Sandra, ruled that Jared would receive parenting time subject to Sandra's discretion, and ordered Jared to pay child support. After reviewing the record, we conclude that Jared's mother could not represent him in these proceedings and that the court did not err in proceeding with the

- 1 -

trial in Jared's absence. We also note plain error in the parenting time arrangement. Thus, we affirm in part, and in part reverse and remand this cause to the district court.

BACKGROUND

Jared and Sandra were married on July 20, 2019. On April 7, 2023, Sandra, acting without counsel, filed a complaint for dissolution of marriage against Jared in the district court. In her complaint, Sandra stated that she and Jared shared one minor child, B.M., who was born in June 2020. Sandra indicated that B.M. had lived with her "full time" since birth and "part time" with Jared until his arrest in September 2020. After Jared's arrest, B.M. remained with Sandra. Sandra indicated in her complaint that Jared was still incarcerated at the time of filing.

Sandra requested sole legal and physical custody of B.M. She also requested that she receive child support according to the Nebraska Child Support Guidelines. In response to the filing of the complaint, the clerk of the district court mailed a document entitled "parenting plan informational material" to both Sandra and Jared. Jared's copy was mailed to Tecumseh State Correctional Institution (TSCI), where he resided.

Two weeks later, the court issued a progression order instructing the parties of several deadlines in the case. The court ordered both parties to register for an approved parent education course within 15 days of the date of service. The court also instructed the parties to disclose relevant financial documents, schedule a mediation session, prepare property statements, and submit exhibits to the court before trial. The trial was to be held in January 2024. A copy of this order was mailed to Jared at TSCI.

On May 18, 2023, an answer and counterclaim for dissolution of marriage was filed by Kally Christiansen, Jared's mother, on behalf of Jared. The answer confirmed that Jared was an inmate in the custody of the Department of Correctional Services and was housed at TSCI. The answer indicated that while Jared consented to the divorce, he was requesting "50/50 custody" of B.M. Attached to the answer was a Nebraska power of attorney form that was executed in September 2021. On this form, Jared designated Christiansen as his agent holding power of attorney and granted her general authority to act for him with respect to a variety of subjects, including real property, tangible personal property claims and litigation, and personal and family maintenance.

That same month, Sandra requested to advance the trial date. The court granted her request and scheduled trial for June 29, 2023. A copy of this order was sent to Jared at TSCI, and another copy was emailed to Christiansen.

On June 29, 2023, the trial was held. Only Sandra appeared in the courtroom. The court noted that in its review of the power of attorney form, "[the court does not] see any authority for or permission granted from [Jared] that his designated power of attorney has authority to communicate with the Court or to ask for certain permissions of the Court." The court further stated that:

> There was some communication through [Christiansen] that she wanted [Jared] to appear by video from Tecumseh, a State penitentiary in Nebraska. I indicated to – through the bailiff to Tecumseh that that request for . . . remote appearance would have to be made by [Jared]. There's been no appearance – no filings made or other communications with [Jared] since that time.

The court moved forward with the trial without Jared or Christiansen.

Sandra was the only witness to testify at the trial. She testified that the marriage was irretrievably broken and could not be repaired. She requested that the court equitably divide their property and restore her maiden name. Sandra did not seek alimony from Jared.

Sandra testified that she believed it to be in B.M.'s best interests to award Sandra sole legal and physical custody. She explained that Jared was in prison with a sentence of 16 to 21 years' imprisonment and that he "can't really do much for her from there." When the court inquired about the incident leading to Jared's incarceration, Sandra testified that Jared had abused her and had assaulted an officer. Sandra testified that Jared had never exhibited assaultive behavior toward B.M.

The court also inquired about Sandra's preferences regarding Jared's parenting time. Sandra believed that it was in B.M.'s best interests to schedule Jared's parenting time subject to Sandra's discretion. Sandra was not opposed to Jared seeing B.M. but wanted to ensure that he was in a good mental state before allowing him time with B.M.

Sandra confirmed that she had completed the court-ordered parenting class. She did not know if Jared had completed a similar class, and the court noted that Jared had not filed a parenting class certificate with the court. Sandra also indicated that she was requesting child support. However, because Jared was incarcerated, she did not believe that he had any substantial income.

At the conclusion of Sandra's testimony, the court made the following oral findings. The court concluded that it had jurisdiction over the subject matter and the parties, that the parties were lawfully married, and that the marriage was irretrievably broken and should be dissolved. The court equitably divided the parties' property and debts. Neither party was awarded alimony. Sandra's maiden name, Carroll, was restored.

The court further determined that it was in B.M.'s best interests to award Sandra sole legal and physical custody of B.M. and to subject Jared's parenting time to Sandra's discretion. The court ordered Jared to pay child support in the amount of $50 per month beginning on May 1, 2023. The court indicated that a written decree and parenting plan would be available sometime after the trial.

The clerk of the district court mailed Jared a journal entry and order which indicated that the trial had been held and that a decree of dissolution detailing the court's findings and rulings was forthcoming. On July 10, 2023, Jared sent a "notice" to the district court stating that he had received the journal entry and order but had not yet received the decree of dissolution. In this notice, Jared also informed the court that he had only discovered after the trial that Christiansen did not appear on his behalf. Jared reiterated his desire for joint custody.

On July 17, 2023, Jared filed a notice of appeal in the district court. The following day, the court's decree of dissolution was filed. In addition to incorporating its oral findings in its decree, the court also attached a parenting plan. In the parenting plan, the district court states that Jared either did not file an answer in these proceedings or failed to cooperate in creating a parenting plan. The parenting plan also reiterates the court's custody award and parenting time arrangement.

Jared appeals.

## ASSIGNMENTS OF ERROR

Jared assigns, summarized and restated, that the district court abused its discretion in (1) determining that Christiansen, acting as Jared's agent holding power of attorney, lacked the authority to communicate to the court on Jared's behalf, (2) failing to grant a continuance, (3) determining the custody award and parenting time arrangement, and (4) ordering Jared to pay $50 per month in child support.

## STANDARD OF REVIEW

A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides. *In re Interest of K.C.*, 313 Neb. 385, 984 N.W.2d 277 (2023).

Consideration of plain error occurs at the discretion of an appellate court. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.* Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur. *Id.*

## ANALYSIS

*Appellate Jurisdiction.*

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue. *In re Interest of K.C., supra.* Although Sandra did not file an appellee brief or raise the issue of jurisdiction, based on the filing timeline in this case, we have determined it necessary to review whether we have jurisdiction.

For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022). In this case, Jared filed his notice of appeal before the court's decree of dissolution was entered. Neb. Rev. Stat. § 25-1912(2) (Cum. Supp. 2022) provides:

> A notice of appeal or docket fee filed or deposited after the announcement of a decision or final order but before the entry of the judgment, decree, or final order shall be treated as filed or deposited after the entry of the judgment, decree, or final order and on the date of entry.

In *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004), this Court noted that announcement of a decision can come in many forms, including from the bench orally, from trial docket notes, from file-stamped but unsigned journal entries, or from signed journal entries which are not file stamped.

Section 25-1912(2) creates what we have called potential jurisdiction or springing jurisdiction, wherein an announced decision creates a situation where the appellate court potentially has jurisdiction that will spring into existence when the announced decision is properly rendered and entered. See, *State v. Brown, supra*; *Welch v. Peery*, 26 Neb. App. 966, 925 N.W.2d

375 (2019). In this case, the district court announced its decision from the bench orally on June 29, 2023. That announcement created potential jurisdiction. Jared filed his notice of appeal on July 17, 2023, and the district court's decree of dissolution was entered on July 18, 2023. In accordance with § 25-1912(2), we treat Jared's notice of appeal as filed after the entry of the dissolution decree and on the date of the decree's entry: July 18. Thus, Jared's notice of appeal was effective, and we have jurisdiction to review his assignments of error.

*Powers of Agent Holding Power of Attorney*
*and Right to Defend Against Suits.*

The next issue we must address is whether the answer filed on Jared's behalf was effective and thus could be considered by the district court. If the answer was ineffective, the court's decree of dissolution is essentially a default judgment against Jared.

The district court's ruling on this issue is unclear. At the outset of the trial, the court found that the power of attorney form did not grant Christiansen permission to communicate with the court on Jared's behalf. This finding suggests that any communications Christiansen made to the court on Jared's behalf were ineffective. The answer filed in this case would fall under such communications. However, the district court did not comment on or rule on the effectiveness of the answer. After reviewing the record and the relevant law, we find that the answer filed by Christiansen was ineffective because only a litigant or a litigant's legal counsel may represent the litigant in a Nebraska court of law.

Before addressing the specific facts of this case, we provide a brief background on power of attorney principles. The Nebraska Supreme Court has defined a power of attorney as "an instrument in writing authorizing another to act as one's agent." *Archbold v. Reifenrath*, 274 Neb. 894, 900, 744 N.W.2d 701, 706 (2008). An agent holding a power of attorney is termed an "attorney in fact" as distinguished from an attorney at law. *Id.* An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent and, further, resulting from another's consent to so act. *Id.* An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest. *Id.*

In 2021, Jared executed a power of attorney, making Christiansen his agent and granting her general authority over many of his private matters, including personal and family maintenance. However, Christiansen lacked the authority and ability to act as Jared's legal counsel. There was no evidence that Christiansen was a member of the Nebraska State Bar who was permitted to practice law and represent others in this state. A legal proceeding in which a party is represented by a person not admitted to practice law is a nullity and is subject to dismissal. See *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024). Individuals can represent themselves in legal proceedings on their own behalf, but one who is not an attorney cannot represent others. *Id.* Thus, Christiansen was incapable of representing Jared in a court of law. As the Supreme Court has recognized, an agent pursuant to a power of attorney is an attorney *in fact*, not an attorney *at law*.

Having determined that Christiansen lacked the ability to represent Jared in court, it follows that any communications or filings she submitted to the district court on his behalf were ineffective.

This means that (1) the answer she filed was ineffective, (2) her request that Jared appear remotely at trial was ineffective, and (3) Jared's first action in this case occurred after the trial when he filed his "notice" to the court. This also leads us to conclude that the decree of dissolution did constitute a default judgment against Jared because he failed to participate prior to or at the trial.

Jared asserts that even if the district court correctly determined that Christiansen could not communicate to the court on his behalf, the court nonetheless erred by failing to give him an opportunity to appear himself. In support of this argument, he compares this case to *Conn v. Conn*, 13 Neb. App. 472, 695 N.W.2d 674 (2005).

The respondent in *Conn* was incarcerated, and his wife brought a dissolution proceeding against him. The respondent asked permission from the trial court to attend the hearing by telephone conference. The trial court clerk informed the respondent that it was not the policy of the court to hold civil matters by telephone conference, and therefore, if he wished to be represented, he would need to appear in person or hire an attorney. The respondent failed to appear due to his incarceration, and no attorney was present on his behalf. The trial proceeded without him. On appeal, this Court determined that the failure to afford the respondent a reasonable opportunity to defend himself deprived him of procedural due process.

Jared argues that these cases are similar in that like the incarcerated respondent in *Conn*, Jared was not afforded a reasonable opportunity to be heard. Thus, Jared asserts that the district court deprived him of procedural due process. We disagree.

This case is distinct from *Conn*. Before trial, Jared did not personally contact the district court with a request to attend the hearing remotely. Instead, Christiansen contacted the court and expressed her desire, in her capacity as Jared's agent, for Jared to attend remotely. This distinction is critical. Because we have determined that Christiansen could not represent Jared in court, her communications with the court were ineffective. Furthermore, Christiansen's communication concerned *her* desire for Jared to appear remotely. Unlike the trial court in *Conn*, the district court in this case had no indication whether Jared wished to attend the trial remotely.

Nevertheless, at the instruction of the district court, the district court bailiff contacted TSCI, where Jared was incarcerated, and indicated that if Jared wished to attend the trial remotely, he had to personally request permission from the court. Jared did not contact the court between that time and the time of trial. Thus, on the day of trial, there was no indication that Jared wanted to participate in the case. The district court could not afford Jared a reasonable opportunity to be heard unless Jared first expressed a desire to be heard.

In his brief on appeal, Jared acknowledges that he failed to contact the court prior to trial, but he alleges that (1) he was never informed of the court's instructions, and (2) he was not given adequate time to make such a request.

Our record is silent as to the exact timeline of the communications between Christiansen, the court, the bailiff, TSCI, and Jared. We do not know when Christiansen first raised the issue of remote appearance, nor do we know when the bailiff contacted TSCI. We also do not know when, if ever, TSCI personnel informed Jared of the court's instructions. Jared's assertion that he was never informed is concerning. However, the record before us is insufficient to determine the validity of this assertion. It is incumbent on the party appealing to present a record which supports the errors assigned, and absent such a record, the decision of the lower court will be affirmed. *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007). Because our record is incomplete as to

the timeline and specific communications, or lack thereof, made to Jared, we cannot say that the district court erred in moving forward with the trial without Jared.

Jared also argues that the district court abused its discretion in failing to grant a continuance of the trial. However, no motion to continue was made in the district court. In addition, Jared does not specifically argue this point in his appellate brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Wright v. Southwest Airlines Co.*, 315 Neb. 911, 2 N.W.3d 186 (2024). Because Jared failed to specifically argue this issue, we do not consider it.

In conclusion, we find that the district court did not err in determining that Christiansen lacked the authority to communicate Jared's wishes to the court. Although our reasoning differs from that of the district court, the court reached the correct result. An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning. *Paw K. v. Christian G.*, 315 Neb. 781, 1 N.W.3d 467 (2024). It follows that the answer filed on Jared's behalf was ineffective, and the decree of dissolution was a default judgment against Jared. Furthermore, the court did not err in proceeding with the trial without Jared.

*Issues Presented for First Time on Appeal.*

Having determined that Christiansen could not represent Jared in court and that the answer filed was ineffective, we now turn to Jared's assignments of error on appeal.

After reviewing the record, we conclude that Jared's assignments of error are raised for the first time on appeal. As we found above, the answer filed on Jared's behalf was ineffective. Jared also failed to appear at the trial. Jared's first and only action in this case, besides appealing to this Court, was the filing of a "notice" 11 days after trial. In the notice, Jared states that he has not yet received the decree of dissolution. He also informs the court that he learned after the trial that Christiansen had not appeared on his behalf. The notice concludes that Jared desires joint custody.

This document is accurately titled as a notice to the court. We cannot and do not interpret it to raise any issues to the district court, including the issues Jared raises on appeal concerning custody, parenting time, or child support. Jared does not motion for a new trial, request the court to alter or amend the judgment, or in any way request that the district court let him be heard on the substantive issues of this case. Instead, Jared simply makes statements regarding the trial, the decree of dissolution, and his desire for joint custody.

A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Pro se litigants, like any other, may not present issues, arguments, and theories for the first time on appeal. *Id.* A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.*

Because Jared failed to raise the issues of custody, parenting time, and child support to the district court, we cannot review his specific assignments of error on appeal.

*Plain Error Regarding Parenting Time.*

Despite Jared's inability to preserve his assignments of error on appeal, we exercise our discretion to notice plain error. Plain error "is not a vehicle that should be routinely used to 'save'

an issue for appeal where a proper objection should have been, but was not, made at trial." *State v. Horne*, 315 Neb. 766, 779, 1 N.W.3d 457, 466 (2024). This is particularly true where, as here, the appellant did not appear for trial. Nonetheless, "plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, or fairness of the judicial process." *Id.* See also *Castillo v. Libert Land Holdings 4*, 316 Neb. 287, 4 N.W.3d 377 (2024).

After reviewing the record, we note plain error in the district court's order concerning parenting time. It is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests. *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties. *Id.* Trial courts cannot delegate this responsibility to custodial parents, because setting the time, manner, and extent of visitation is solely the duty of the court. See *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014).

In this case, the district court delegated its responsibility to determine parenting time to Sandra. The court held that Jared's parenting time would be subject to Sandra's discretion. This is erroneous, as it was the court's obligation to set the specific time, manner, and extent of Jared's parenting time. Accordingly, we find plain error in the district court's order allowing Sandra to determine if and when Jared receives parenting time. On remand, the district court must determine the schedule for Jared's parenting time with B.M.

## CONCLUSION

For the foregoing reasons, we conclude that Christiansen, acting as Jared's attorney in fact, could not file pleadings on Jared's behalf. Thus, Jared's answer was ineffective, and default judgment was properly entered against him. Additionally, the court did not err in proceeding with the trial in Jared's absence. Having reviewed the case for plain error, we find that the district court committed plain error in delegating its responsibility to determine Jared's parenting time to Sandra. We, therefore, vacate that portion of the decree of dissolution and parenting plan and remand the cause on that issue only. We otherwise affirm the decree of dissolution.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.